1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TRACY LAVIAL COLLIER,                    No.  2:25-cv-0874 AC P

12                    Plaintiff,

13           v.                                ORDER

14    COVELLO, et al.,

15                    Defendants.

16

17          Plaintiff is a state inmate who filed this pro se civil rights action pursuant to 42 U.S.C.

18    § 1983 (Civil Rights Act of 1964), and 42 U.S.C. § 12132 (the Americans with Disabilities Act

19    ("ADA")).  Pending before the court is plaintiff's complaint, motion for an extension of time to

20    file a late application to proceed in forma pauperis, and a motion to proceed in forma pauperis.

21    ECF Nos. 1, 7, 8.

22          I.      Motions to Proceed In Forma Pauperis and for an Extension of Time

23          Because plaintiff initially failed to pay the filing fee or submit an application to proceed in

24    forma pauperis with his civil rights complaint, the court ordered him to do so within thirty days.

25    ECF No. 4.  After that deadline passed, the court granted plaintiff an additional twenty-one days

26    to pay the filing fee or apply to proceed in forma pauperis.  ECF No. 6.  Within the time frame

27    provided, plaintiff filed a motion for an extension of time to file a late application to proceed in

28    ////

                                                  1

1    forma pauperis and a motion to proceed in forma pauperis under 28 U.S.C. § 1915.  ECF Nos. 7,

2    8.

3          In light of the court's order giving plaintiff additional time to file the application and the

4    filing of plaintiff's application within that timeframe, the court denies plaintiff's motion for an

5    extension of time as unnecessary.  Because plaintiff has submitted a declaration pursuant to 28

6    U.S.C. § 1915(a)(2), showing that he cannot afford to pay the entire filing fee, his motion to

7    proceed in forma pauperis is granted.[1]

8          II.      Statutory Screening of Prisoner Complaints

9          The court is required to screen complaints brought by prisoners seeking relief against "a

10   governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A

11   claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v.

12   Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on

13   an indisputably meritless legal theory or factual contentions that are baseless.  Id. at 327.  The

14   critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable

15   legal and factual basis.  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by

16   statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

17         In order to avoid dismissal for failure to state a claim a complaint must contain more than

18   "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a

19   cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  In other words,

20   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

21   statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

22   court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

23   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

24
   _____

25   [1]  This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that
     are taken from the inmate's trust account rather than in one lump sum.  28 U.S.C. §§ 1914(a),
26   1915(b)(1).  As part of this order, the prison is required to remove an initial partial filing fee from
     plaintiff's trust account.  See 28 U.S.C. § 1915(b)(1).  A separate order directed to the appropriate
27   agency requires monthly payments of twenty percent of the prior month's income to be taken
     from plaintiff's trust account.  These payments will be taken until the $350 filing fee is paid in
28   full.  See 28 U.S.C. § 1915(b)(2).

inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

III.    Factual Allegations of the Complaint

The complaint alleges that defendants Covello, Rogers, Clegg, Mendoza, and Nelson violated plaintiff's rights under the First and Eighth Amendments to the United States Constitution and Title II of the Americans with Disabilities Act ("ADA").  ECF No. 1.  More specifically, the complaint alleges the following.

On August 9, 2024, non-defendant Dr. Wong, classified plaintiff as DPM, which is a designation for inmates with "severe mobility restrictions" who "use[] assistive devices other than a [wheelchair] to ambulate" and "cannot walk up/down stairs because of disability."  Id. at 9, 19. Based on plaintiff's new designation, Dr. Wong ordered plaintiff be transferred to an "ADA medical prison" and that plaintiff receive "follow-up surgery and physical therapy" for his knee. Id. at 9.  Mule Creek State Prison ("MCSP") is not recommended due to unleveled ground.  Id. at 9, 44.

A few days later, defendant Mendoza informed plaintiff that he was approved for transfer, made a remark suggesting he does not believe plaintiff has an ADA disability, and told plaintiff that it would be faster if he did not go to his classification committee hearing.  Id. at 9.  When plaintiff met with his EOP treatment team, non-defendant Dr. Diaz questioned why plaintiff was being transferred to a higher level of care based on a medical transfer.  Id.  Because plaintiff did not attend the hearing, he did not know why.  Id.

On September 1, 2024, after defendant Mendoza received a notice and copy of plaintiff's grievance against her, she made angry remarks, told plaintiff that if it were up to her, he would go to the SHU, told him he will be transferred when she wants to transfer him, and made fun of plaintiff's writing and spelling in the 602 grievance.  Id. at 10.  The next day, defendant Mendoza told plaintiff the Classification Staff Representative ("CSR") rejected her decision to transfer him

to a higher-level prison and ordered plaintiff be transferred to a low-level prison for medical accommodations.  Id.  Defendant Mendoza called plaintiff a faker and when plaintiff complained, defendant Mendoza told plaintiff to "go suicidal, go suicidal weirdo, you aint special, you'll keep waiting."  Id. at 10-11.  Defendant Mendoza then tried to get a nurse to change plaintiff's ADA status, but the nurse told Mendoza she needed to email Dr. Wong.  Id. 11.  The next day, when plaintiff met with Dr. Wong for a follow up appointment regarding his knee pain, Dr. Wong informed plaintiff that defendant Mendoza emailed Dr. Wong stating she saw plaintiff walk without his walker, that plaintiff does not need a walker, and that Dr. Wong should consider voiding plaintiff's ADA status.  Id. at 11-12.  Defendant Mendoza's conduct violated plaintiff's HIPAA medical privacy rights.  Id. at 12.  Defendant Mendoza also deceitfully caused plaintiff to miss his committee hearing, again.  Id.

On September 19, 2024, plaintiff asked about his medical transfer and was told by a non-defendant counselor that although the notes said he was ADA and an ADA transfer had been ordered over thirty days ago, defendant Mendoza had not processed some paperwork and his ADA status in the computer was pending.  Id.  On September 22, 2024, defendant Nelson refused plaintiff's request for classification paperwork.  Id.

On September 24, 2024, plaintiff asked defendant Clegg why he had not been transferred based on Dr. Wong's transfer order for ADA accommodation.  Id. at 13.  Defendant Clegg responded that he hates when an inmate files grievances against him and then try to talk to him; plaintiff "can stop filing 602 complaints because they are not helping [plaintiff]"; "I run the show"; and "you're not going anywhere until your RVR from Lancaster State Prison, get found guilty and then you're going back to high-level Lancaster level four."  Id.  Plaintiff responded that Clegg could not use a January 2024 rules violation report ("RVR") to stop his ADA transfer since his January 2024 RVR did not stop his transfer to MCSP, and that it was a violation of plaintiff's due process rights to do so because California Department of Corrections and Rehabilitation ("CDCR") regulations require RVRs to be served and heard within forty-five days.  Id. at 13-14.

On September 25, 2024, when plaintiff tried to talk to defendant Rogers, Rogers acknowledged that he knew who plaintiff was and had seen all the emails against his medical

transfer and his hunger strike.  Id. at 14.  Defendant Rogers told plaintiff that they did not want to transfer him until the RVR from Lancaster is resolved and that Lancaster is not cooperating with plaintiff's request for video footage, and offered to speed-up plaintiff's ADA medical transfer if plaintiff waived his due process rights to the video evidence and plead guilty.  Id. at 15.  Plaintiff declined and continued his hunger strike.  Id.

On September 28, 2024, plaintiff was found not guilty of the RVR from Lancaster.  Id. On October 9, 2024, after filing over ten grievances, contacting the Prison Law Office and chief medical staff, and going on hunger strike, plaintiff went before a unit classification committee. When he brought up that defendants Clegg and Mendoza had retaliated against him by changing him to C status, which means no yard, phone, dayroom, package or any other privileges, defendant Rogers refused to address the issue and told plaintiff to add it to his 602 grievances.  Id.

On or about October 15, 2024, plaintiff was finally transferred to RJD State Prison.  Id. Medical transfers usually take 72 hours to fifteen days, however, due to defendants' retaliatory conduct, plaintiff's transfer took more than sixty days.  Id. at 16.  Defendants' conduct caused plaintiff unnecessary knee pain by delaying his treatment upon transfer, and mental anguish.  Id. at 3, 8-10, 16.

Defendants Covello, Rogers, and Clegg, as warden, captain, and correctional counselor II ("CCII"), respectively, have a duty to ensure that the MCSP employees "are properly trained and supervised to fulfil the penological interests of all prisons."  Id. at 1-2, 7.  They violated this duty and failed to correct other defendants' violations of plaintiff's rights.  Id. at 7.  Defendants Rogers, Clegg, Mendoza, and Nelson "are responsible for the safety and security" at MCSP.  Id. Defendant Rogers, who supervises defendants Clegg and Mendoza, and defendant Clegg, who supervises defendant Mendoza, were present at all of plaintiff's medical transfer committee hearings and deliberately indifferent to plaintiff's ADA accommodation for immediate transfer to a facility that can house inmates designated DPM.  Id. at 7, 13-14.[2]

---

[2]  Plaintiff attaches thirty-two pages of exhibits.  ECF No. 1 at 18-50.  The exhibits include an 1845/7410 medical entry dated August 9, 2024, id. at 19-20; medical progress notes dated August 9, 2024, and September 3, 2024, id. at 22-23, 25-26; grievance and appeals decisions dated (continued…)

By way of relief, plaintiff seeks compensatory and punitive damages against all defendants.  Id. at 6, 17.

IV.    Claims for which Plaintiff has Sufficiently Stated a Right to Relief

The court has conducted the screening required by 28 U.S.C. § 1915A(a) and finds that the complaint, liberally construed, states a First Amendment retaliation claim against defendants Mendoza and Clegg based on their interference with plaintiff's ADA transfer and changing plaintiff's privilege status to C-status designation after plaintiff filed grievances against them.

V.    Failure to State a Claim

For the reasons that follow, the allegations in the complaint are not sufficient to state any claims against defendants Covello, Rogers, and Nelson, and/or any other claims against defendants Mendoza and Clegg.

A.    Defendant Covello

Plaintiff fails to state a claim against defendant Covello because a warden cannot be held responsible for the conduct of his subordinates just because he is a supervisor (warden), and plaintiff has not alleged facts that Covello personally participated in, directed, and/or knew of the violations and failed to prevent them.  Moreover, to the extent plaintiff is attempting to state a failure to train claim against Covello he fails to do so because he has not alleged facts from which the court can infer Covello knew officers at MCSP were retaliating against and/or denying ADA accommodations to inmates who filed grievances and/or that more or different training was necessary to prevent the alleged constitutional violations before they occurred.

B.    Defendant Rogers

Plaintiff fails to state any claim against defendant Rogers because Rogers cannot be held liable based on the conduct of his subordinates, there are no allegations that Rogers was responsible for training defendants Mendoza and/or Clegg and that he knew there was a need for

_____

December 12 and 25, 2024, id. at 28-29, 36-37, 39-40, 48; three grievances dated September 4, 2024, September 20, 2024, and October 9, 2024, id. at 30-31, 41-42, 49-50; two reasonable accommodation panel responses each dated October 11, 2024, id. at 32; a reasonable accommodation request dated September 23, 2024, id. at 34; and two classification committee chronos dated August 29, 2024, and October 9, 2024, id. at 44-47.

1    more or different training to prevent the alleged constitutional violations, and all other allegations

2    against him are conclusory and/or otherwise insufficient.

3    Plaintiff fails to state a First Amendment retaliation claim against defendant Rogers

4    because the complaint lacks factual allegations that Rogers said or did anything or heard and/or

5    saw anyone else say or do something that would suggest his conduct was motivated by plaintiff's

6    grievances.  To the extent plaintiff is attempting to state a Fourteenth Amendment process

7    procedural due process violation based on Roger's failure to address plaintiff's concerns

8    regarding his C status and change in privileges, plaintiff fails to state a claim because it is well-

9    established that prisoners have no constitutional right to a particular classification, even if it

10    results in the temporary loss of privileges.  The temporary loss of yard, phone, dayroom, and

11    package privileges do not impose an atypical and significant hardship on plaintiff beyond what is

12    a normal part of prison life, such as to warrant procedural protections.

13    C.  Defendant Mendoza

14    To the extent plaintiff is attempting to state an Eighth Amendment claim based on

15    defendant Mendoza's offensive and/or vulgar language, the claim fails because such statements,

16    alone, do not violate the Eighth Amendment.  Also, to the extent plaintiff is attempting to state a

17    violation under the Health Insurance Portability and Accountability Act ("HIPAA") against

18    defendant Mendoza, he fails to do so because HIPAA does not provide a private right of action

19    for a claim and HIPAA cannot be enforced through § 1983.

20    D.  Defendant Clegg

21    Plaintiff fails to state any other claims not identified above against defendant Clegg

22    because Clegg cannot be held responsible for the conduct of his subordinates, and there are no

23    allegations that Clegg was responsible for training defendant Mendoza and that he knew there

24    was a need for more or different training to prevent the alleged constitutional violations.  Also, to

25    the extent plaintiff is attempting to state a due process claim against Clegg based on the failure to

26    hear plaintiff's RVR within forty-five days, plaintiff fails to do so because a violation of prison

27    policy is not grounds for a § 1983 claim.  A § 1983 claim must be based on a violation of a

28    federal right.  The Fourteenth Amendment does not require any timeline for holding a prison

1    disciplinary hearing; nor is the court aware of any *federal* statutory right to a hearing within the

2    time specified.

3        E.   Defendant Nelson

4        It is not entirely clear what type(s) of claim(s) plaintiff is attempting to state against

5    defendant Nelson.  To the extent he is attempting to state a violation of his due process rights

6    based on Nelson's denial of plaintiff's classification paperwork, he fails because, as discussed

7    above, he must allege a violation of a federal right.  Because plaintiff has no federal right to a

8    particular classification or process with respect to his classification, he has not alleged a § 1983

9    claim against defendant Nelson.

10        F.   Eighth Amendment Deliberate Indifference Claim

11        Plaintiff fails to state an Eighth Amendment medical deliberate indifference claim against

12    any defendant because he has not alleged that any defendant was aware plaintiff had a serious

13    medical need—i.e. needed treatment for his knee pain and/or surgery.  The complaint merely

14    alleges that defendant Mendoza knew plaintiff had an order for a medical transfer based on the

15    need to be in a facility that could meet his ADA needs, and suggests that defendants Rogers and

16    Clegg were aware of the same.  The court cannot infer from these facts that plaintiff had a serious

17    medical need, much less that defendants knew his transfer was necessary to treat a serious

18    medical need.

19        Moreover, plaintiff has attached evidence that on August 9, 2024, when he was classified

20    DPM, he was counseled on surgical and non-surgical medical treatment options for his knee and

21    that he refused, multiple times, against medical advice, a referral to an orthopedic specialist, that

22    he indicated he was "not interested in further diagnostic testing," and that he "would like to

23    continue current therapy."  Id. at 26.  The court cannot infer from those records, or the

24    classification hearing records that any defendant knew transfer was necessary for plaintiff to

25    receive adequate treatment and/or surgery.  See id. at 19, 25-26, 44-47.  Quite to the contrary, the

26    records suggest plaintiff was already receiving the treatment he was willing to receive at MCSP

27    and transfer would not change his treatment plan or result in surgery.  Id.

28    ////

G. <u>Americans with Disability Act Reasonable Accommodations Claim</u>

To the extent plaintiff is attempting to state an ADA discrimination claim, he fails because he has not identified a proper defendant and because plaintiff has not presented factual allegations from which the court can infer that he was excluded from participating in or denied the benefits of any *programs, services, or activities* provided by a public entity (e.g. MCSP and/or CDCR) or otherwise discriminated against by a public entity and that he was otherwise qualified to participate or receive those benefits.  More importantly, plaintiff has not alleged that any defendant said or did anything or heard and/or saw anyone else say or do something that would suggests that their conduct was motivated by plaintiff's disability.

H. <u>Section 1983 Conspiracy</u>

Plaintiff also appears to be attempting to state a conspiracy claim against defendants.  To the extent that is the case, plaintiff fails to state a § 1983 conspiracy claim against *any* defendant because mere allegations of a conspiracy and conclusory allegations that defendant acted jointly are insufficient.

Because it appears to the court that plaintiff may be able to allege facts to fix some of these problems, plaintiff will be given the option to amend the complaint.

VI.    <u>Options from Which Plaintiff Must Choose</u>

Based on the court's screening, plaintiff has a choice to make.  After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**The first option available to plaintiff is to proceed immediately against defendants Mendoza and Clegg on the First Amendment retaliation claim.  By choosing this option, plaintiff will be agreeing to voluntarily dismiss defendants Covello, Rogers, Nelson, the ADA, conspiracy, and Eighth and Fourteenth Amendment claims, and any other claims against defendants Mendoza and Clegg.  The court will proceed to immediately serve the complaint and order a response from defendant Mendoza and Clegg on the First Amendment retaliation claim.**

**The second option available to plaintiff is to file an amended complaint to fix the**

9

**problems described in Section IV against defendants Covello, Rogers, Nelson, Mendoza, Clegg and on the ADA, conspiracy, and Eighth and Fourteenth Amendment claims.  If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.**

VII.    <u>Plain Language Summary of this Order for Party Proceeding Without a Lawyer</u>

Some of the allegations in the complaint state claims against the defendants and some do not.  You have sufficiently stated retaliation claims against defendants Mendoza and Clegg, but you have not stated any other claims against them or against defendants Covello, Rogers, and Nelson.

You have a choice to make.  You may either (1) proceed immediately on your First Amendment retaliation claims against defendants Mendoza and Clegg and voluntarily dismiss the other claims and defendants; or, (2) try to amend the complaint.  To decide whether to amend your complaint, the court has attached the relevant legal standards that may govern your claims for relief.  <u>See</u> Attachment A.  Pay particular attention to these standards if you choose to file an amended complaint.

VIII.    <u>CONCLUSION</u>

In accordance with the above, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for an extension of time (ECF No. 7) is DENIED as unnecessary.

2.    Plaintiff's request for leave to proceed in forma pauperis (ECF No. 8) is GRANTED.

3.    Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

4.    Plaintiff's claims against defendants Covello, Rogers, and Nelson do not state claims for which relief can be granted.  Plaintiff's ADA and Eighth and Fourteenth Amendment due process claims also do not state claims for which relief can be granted.

5.    Plaintiff has the option to proceed immediately on his First Amendment retaliation claim against defendants Mendoza and Clegg as set forth in Section III above, or to file an

1  amended complaint.

2          6.  Within 21 days from the date of this order, plaintiff shall complete and return the

3  attached Notice of Election form notifying the court whether he wants to proceed on the screened

4  complaint or whether he wants to file an amended complaint.

5          7.  If plaintiff does not return the form, the court will assume that he is choosing to

6  proceed on the complaint as screened and will recommend dismissal *without* prejudice of

7  plaintiff's ADA, conspiracy, Eighth and Fourteenth Amendment claims and defendants Covello,

8  Rogers, and Nelson.

9  DATED: November 17, 2025

10

11         ALLISON CLAIRE
           UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT
8                      FOR THE EASTERN DISTRICT OF CALIFORNIA
9
10   TRACY LAVIAL COLLIER,                    No.  2:25-cv-0874 AC P
11            Plaintiff,
12       v.                                   NOTICE OF ELECTION
13   COVELLO, et al.,
14            Defendants.
15
16       Check one:
17   _____ Plaintiff wants to proceed immediately on his First Amendment retaliation claim against
18       defendants Mendoza and Clegg without amending the complaint.  Plaintiff understands
19       that by choosing this option, the ADA, conspiracy, Eighth and Fourteenth Amendment
20       claims and defendants Covello, Rogers, and Nelson will be voluntarily dismissed without
21       prejudice pursuant to Federal Rule of Civil Procedure 41(a).
22   _____ Plaintiff wants time to file an amended complaint.
23
24   DATED:_____
25                                         _____
                                          Tracy Lavial Collier
26                                        Plaintiff pro se
27
28
                                               1

Attachment A

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief. Pay particular attention to these standards if you choose to file an amended complaint.

I.    Legal Standards Governing Amended Complaints

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must specifically identify how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. See Local Rule 220. This is because, as a general rule, an amended complaint replaces the prior complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Therefore, in an amended complaint, every claim and every defendant must be included.

II.    Legal Standards Governing Substantive Claims for Relief

A.    Personal Involvement

"Liability under § 1983 must be based on the personal involvement of the defendant," Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the

1  deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.

2  1978) (citation omitted).  In other words, to state a claim for relief under section 1983, plaintiff

3  must link each individual defendant with some affirmative act or omission that shows a violation

4  of plaintiff's federal rights.

5                B.  Supervisory Liability

6         "There is no respondeat superior liability under section 1983," Taylor v. List, 880 F.2d

7  1040, 1045 (9th Cir. 1989) (citation omitted), which means that a supervisor cannot be held

8  responsible for the conduct of his subordinates just because he is their supervisor.  "A supervisor

9  is only liable for constitutional violations of his subordinates if the supervisor participated in or

10  directed the violations, or knew of the violations and failed to act to prevent them."  Id.

11                C.  Failure to Train

12         The inadequacy of training may serve as a basis for liability under section 1983 where the

13  failure to train amounts to deliberate indifference to the rights of persons with whom the

14  subordinates come into contact.  Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991).  To

15  satisfy the deliberate indifference standard, plaintiff "must allege facts to show that the

16  [defendant] 'disregarded the known or obvious consequence that a particular omission in their

17  training program would cause . . . employees to violate citizens' constitutional rights.'"  Flores v.

18  County of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing Connick v. Thompson, 563

19  U.S. 51, 51-52 (2001)).  A pattern of similar violations is ordinarily necessary to state a claim for

20  failure to train, because absent such a pattern the individual or entity cannot have been aware that

21  their failure to train would likely cause further constitutional violations.  Id.; see also Davis v.

22  City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989) (same standard for inadequate training

23  applies to inadequate supervision).

24         Isolated incidents by two deputies do not suffice to put the sheriff on "'notice that a course

25  of training is deficient in a particular respect,' nor that the absence of such a course 'will cause

26  violations of constitutional rights.'"  Flores, 758 F.3d at 1159 (quoting Connick, 563 U.S. at 62);

27  see also Lake v. City of Vallejo, No. 2:19-cv-1439 DAD KJN, 2023 WL 4086885, at *13, 2023

28  U.S. Dist. LEXIS 106255, at *38 (E.D. Cal. June 20, 2023) (plaintiff "must—at a minimum—

1    allege more than two incidents that predate the incident involving plaintiff to be considered

2    plausible notice to defendant . . . that there was a failure to train").

3                    D.  Federal Right

4         Section 1983 provides in relevant part:

5              Every person who, under color of any statute, ordinance, regulation,
              custom, or usage, of any State or Territory or the District of

6              Columbia, subjects, or causes to be subjected, any citizen of the
              United States or other person within the jurisdiction thereof to the

7              deprivation of any rights, privileges, or immunities secured by the
              Constitution and laws, shall be liable to the party injured in an action

8              at law, suit in equity, or other proper proceeding for redress . . . .

9    42 U.S.C. § 1983.  Accordingly, "the requirements for relief under [§] 1983 have been articulated

10   as: (1) *a violation of rights protected by the Constitution or created by federal statute,*

11   (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."

12   Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991) (emphasis added).

13        An officer's violation of state laws and/or regulations is not grounds for a § 1983 claim.

14   See Case v. Kitsap County Sheriff's Dept., 249 F.3d 921, 930 (9th Cir. 2001) (quoting Gardner v.

15   Howard, 109 F.3d 427, 430 (8th Cir 1997) ("[T]here is no § 1983 liability for violating prison

16   policy. [Plaintiff] must prove that [the official] violated his constitutional right . . .")).  Violations

17   of state law and regulations cannot be remedied under § 1983 unless they also violate a federal

18   constitutional or statutory right.  See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009)

19   (section 1983 claims must be premised on violation of federal constitutional right); Sweaney v.

20   Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for

21   violation of federal law); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996)

22   (federal and state law claims should not be conflated; "[t]o the extent that the violation of a state

23   law amounts the deprivation of a state-created interest that reaches beyond that guaranteed by the

24   federal Constitution, Section 1983 offers no redress").

25                    E.  Conspiracy

26        To state a claim for conspiracy under 42 U.S.C. § 1983, plaintiff must plead specific facts

27   showing an agreement or meeting of minds between the defendants to violate his constitutional

28   rights.  Woodrum v. Woodward Cty., 866 F.2d 1121, 1126 (9th Cir. 1989); Karim-Panahi v. Los

                                   3

1  Angeles Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy

2  without factual specificity is insufficient." (citation omitted)).  Plaintiff must also show how an

3  actual deprivation of his constitutional rights resulted from the alleged conspiracy.  Id.  "'To be

4  liable, each participant in the conspiracy need not know the exact details of the plan, but each

5  participant must at least share the common objective of the conspiracy.'"  Franklin v. Fox, 312

6  F.3d 423, 441 (9th Cir. 2002) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865

7  F.2d 1539, 1541 (9th Cir. 1989)).  Additionally, plaintiff must show that defendants "conspired or

8  acted jointly in concert and that some overt act [was] done in furtherance of the conspiracy."

9  Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).

10                          F.  First Amendment Retaliation

11          To state a claim for retaliation, a plaintiff must allege defendants (1) took adverse action

12  against plaintiff (2) because of (3) plaintiff's protected conduct, and that the action (4) would chill

13  an inmate of reasonable firmness from future protected conduct and (5) lacked a legitimate

14  correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

15          An adverse action is an act (or failure to act) by prison officials which causes harm, and

16  "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out."

17  Brodheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir. 2009) (emphasis in original).  To show

18  defendants retaliated "because of" the plaintiff's actions, the plaintiff must show the defendants

19  were motivated by his protected conduct.  See Crawford-El v. Britton, 523 U.S. 574, 592 (1998)

20  (proof of defendant's general animosity toward plaintiff would not necessarily show her conduct

21  was motivated by plaintiff's protected conduct).  Protected conduct refers to acts taken by the

22  plaintiff that are protected by the First Amendment and may include lawsuits and grievances, as

23  well as verbal complaints or threats to sue.  See Rhodes, 408 F.3d at 567 (prisoners have a First

24  Amendment right to file prison grievances and pursue civil litigation); Shepard v. Quillen, 840

25  F.3d 686, 688 (9th Cir. 2016) (prisoners have "First Amendment right to report staff

26  misconduct"); Jones v. Williams, 791 F.3d 1023, 1036 (9th Cir. 2015) (threats to sue constitute

27  protected conduct); Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) (form of complaint,

28  including verbal, "is of no constitutional significance").

                                         4

1    The alleged adverse action need not itself be an independent constitutional violation. <u>Pratt</u>

2  <u>v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff "need not

3  establish an independent constitutional interest" was violated); <u>cf.</u> <u>Rizzo v. Dawson</u>, 778 F.2d

4  527, 531-32 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action

5  for purposes of retaliation claim).

6    G.  <u>Eighth Amendment</u>

7    i.  <u>Medical Deliberate Indifference</u>

8    "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

9  must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091,

10  1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  This requires plaintiff

11  to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

12  could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

13  (2) "the defendant's response to the need was deliberately indifferent." <u>Id.</u> (some internal

14  quotation marks omitted) (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

15  A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to

16  respond to a prisoner's pain or possible medical need and (b) harm caused by the

17  indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060).  Deliberate indifference "may appear

18  when prison officials deny, delay or intentionally interfere with medical treatment, or it may be

19  shown by the way in which prison physicians provide medical care." <u>Hutchinson v. United</u>

20  <u>States</u>, 838 F.2d 390, 394 (9th Cir. 1988) (citation omitted).  "[A] complaint that a physician has

21  been negligent in diagnosing or treating a medical condition does not state a valid claim of

22  medical mistreatment under the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 106.

23    A difference of opinion between an inmate and prison medical personnel—or between

24  medical professionals—regarding the appropriate course of treatment does not by itself amount to

25  deliberate indifference to serious medical needs. <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058 (9th

26  Cir. 2004); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989).  A difference of opinion rises to

27  the level of deliberate indifference when "the chosen course of treatment 'was medically

28  unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive

5

1    risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (alteration in original) (quoting

2    Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

3         To state a claim for deliberate indifference based on a delay in receiving treatment, the

4    delay must have been harmful. See Shapley v. Nev. Bd. of State Prison Comm'rs., 766 F.2d 404,

5    407 (9th Cir. 1985) (delay of surgery did not constitute deliberate indifference unless delay was

6    harmful).

7                  ii.   Conditions of Confinement

8         "The Constitution does not mandate comfortable prisons, but neither does it permit

9    inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and

10    citation omitted). "[A] prison official violates the Eighth Amendment only when two

11    requirements are met." Id. at 834.

12         "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Id. (quoting

13    Wilson v. Seiter, 501 U.S. 294, 298 (1991)). To be sufficiently serious, "a prison official's act or

14    omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Id.

15    (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "[R]outine discomfort inherent in the

16    prison setting" does not rise to the level of a constitutional violation. Johnson v. Lewis, 217 F.3d

17    726, 732 (9th Cir. 2000). Rather, "extreme deprivations are required to make out a[n] [Eighth

18    Amendment] conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

19    "More modest deprivations can also form the objective basis of a violation, but only if such

20    deprivations are lengthy or ongoing." Johnson, 217 F.3d at 732.

21         Second, the prison official must subjectively have a "sufficiently culpable state of mind,"

22    "one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834 (citations

23    omitted). "[T]he official must both be aware of facts from which the inference could be drawn

24    that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. He

25    must then fail to take reasonable measures to lessen the substantial risk of serious harm. Id. at

26    847. If a prison official's response to a known risk is reasonable, they "cannot be found liable."

27    Id. at 845.

28         Allegations of only verbal harassment do not state an Eighth Amendment claim. Somers

1   v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997) (stating that "the exchange of verbal insults

2   between inmates and guards is a constant, daily ritual observed in this nation's prisons" of which

3   "we do not approve," but which do not violate the Eighth Amendment); Oltarzewski v. Ruggiero,

4   830 F.2d 136, 139 (9th Cir. 1987) (vulgar comments do not violate Eighth Amendment).

5                    H.  Fourteenth Amendment Procedural Due Process

6                        i.  Classification

7        It is well-established that prisoners have no constitutional right to a particular

8   classification, even if it results in loss of privileges.  See Myron v. Terhune, 476 F.3d 716, 718

9   (9th Cir. 2007) (concluding California prisoner does not have liberty interest in residing at a level

10  III prison as opposed to level IV); Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987)

11  (emphasizing that "'a prisoner has no constitutional right to a particular classification status'")

12  (quoting Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)); see also Sunkett v. Boerum, No. 1:17-

13  cv-1137 HBK, 2024 WL 4369900, at *4, 2024 U.S. Dist. LEXIS 178253, at *10–11 (E.D. Cal.

14  Sept. 30, 2024) ("It is well settled that prisoners have no constitutional right to a particular

15  classification status, even if the classification status results in a loss of privileges.")

16                       ii.  Disciplinary Hearing

17       "Prison disciplinary proceedings are not part of a criminal prosecution, and the full

18  panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418

19  U.S. 539, 556 (1974).  Rather, with respect to prison disciplinary proceedings that include the loss

20  of good-time credits, an inmate must receive (1) twenty-four-hour advanced written notice of the

21  charges against him, id. at 563-64; (2) "a written statement by the factfinders as to the evidence

22  relied on and reasons for the disciplinary action," id. at 564 (citation and internal quotation marks

23  omitted); (3) an opportunity to call witnesses and present documentary evidence where doing so

24  "will not be unduly hazardous to institutional safety or correctional goals," id. at 566; (4)

25  assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a

26  sufficiently impartial fact finder, id. at 570-71.  A finding of guilt must also be "supported by

27  some evidence in the record."  Superintendent v. Hill, 472 U.S. 445, 454 (1985).

28  The Wolff court noted that its decision was not meant to "suggest . . . that the procedures required

                                        7

1   . . . for the deprivation of good time would also be required for the imposition of lesser penalties

2   such as the loss of privileges." Wolff, 418 U.S. at 571 n.19.  When a prisoner does not lose any

3   good-time credits, he may also demonstrate that he is entitled to the due process outlined in Wolff

4   by alleging facts showing that the disciplinary "impose[d] atypical and significant hardship on

5   [him] in relation to the ordinary incidents of prison life." Sandin v. O'Conner, 515 U.S. 472, 484

6   (1995).

7                          I.    Americans with Disabilities Act

8            Title II of the ADA applies to inmates within state prisons. Pennsylvania Dept. of

9   Corrections v. Yeskey, 524 U.S. 206 (1998).  To state a claim for violation of Title II of the ADA,

10  a plaintiff must allege four elements:

11           (1) [H]e is an individual with a disability; (2) he is otherwise
             qualified to participate in or receive the benefit of some public
12           entity's services, programs, or activities; (3) he was either excluded
             from participation in or denied the benefits of the public entity's
13           services, programs, or activities, or was otherwise discriminated
             against by the public entity; and (4) such exclusion, denial of
14           benefits, or discrimination was by reason of [his] disability.

15  O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007); see also Thompson v.

16  Davis, 295 F.3d 890, 895 (9th Cir. 2002); Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir.

17  2001).

18           "A plaintiff can allege disability discrimination in the provision of inmate services,

19  programs, or activities under the ADA or the Rehabilitation Act by pleading either (1)

20  discrimination based on disparate treatment or impact, or (2) denial of reasonable modifications

21  or accommodations." Cravotta v. County of Sacramento, 717 F. Supp. 3d 941, 956 (E.D. Cal.

22  2024); see Dunlap v. Ass'n of Bay Area Gov'ts, 996 F. Supp. 962, 965 (N.D. Cal. 1998) ("[T]he

23  ADA not only protects against disparate treatment, it also creates an affirmative duty in some

24  circumstances to provide special, preferred treatment, or 'reasonable accommodation.'").  To

25  support such a disparate impact claim, a plaintiff must demonstrate that the policy has the "effect

26  of denying meaningful access to public services." K.M. ex rel. Bright v. Tustin Unified Sch.

27  Dist., 725 F.3d 1088, 1102 (9th Cir. 2013).  Although § 12132 does not expressly provide for

28  reasonable accommodations, the implementing regulations provide that "[a] public entity shall

                                                    8

make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i); see also Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008).

"[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in original). The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. United States v. Georgia, 546 U.S. 151, 153 (2006). State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Penn. Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998); Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). ADA claims may not be brought against state officials in their individual capacities. Stewart v. Unknown Parties, 483 F. App'x 374, 374 (9th Cir. 2012) (citing Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002)); Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." (citations omitted)).

Compensatory damages are available under the ADA when plaintiff demonstrates that the discrimination he experienced was the result of deliberate indifference, which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." Duvall, 260 F.3d at 1139 (citations omitted). "When the plaintiff has alerted the public entity to his need for accommodation . . ., the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." Id. at 1139. "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." Id. (citations omitted).

////

9

1

2

3

4

5

6

7

8

9

          J.   <u>HIPAA claim</u>

       The Ninth Circuit has definitively declared "HIPAA itself provides no private right of action." <u>Garmon v. County of Los Angeles</u>, 828 F.3d 837, 847 (9th Cir. 2016) (quoting <u>Webb v. Smart Document Solutions, LLC</u>, 499 F.3d 1078, 1081 (9th Cir. 2007)).  Other circuits have explicitly found that HIPAA cannot be enforced through Section 1983.  <u>Adams v. Eureka Fire Prot. Dist.</u>, 352 Fed. Appx. 137, 139 (8th Cir. 2009) ("Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action"); <u>Sneed v. Pan Am Hosp.</u>, 370 Fed. Appx. 47, 50 (11th Cir. 2010) ("We decline to hold that HIPAA creates a private cause of action or rights that are enforceable through § 1983").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28